**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:24-CR-00025-GFVT-MAS-1 |
| ) | |
| **WILLIAM MICHAEL ELLISON,** ) | |
| ) | |
| Defendant. ) | |

**REPORT & RECOMMENDATION**

In the early hours of August 27, 2023, Defendant William Ellison sat asleep in the passenger seat of a SUV parked in a parking lot at the corner of Winchester Avenue and Seventh Street. His friend who had driven the SUV as well as the SUV's owner had left him there while they got something to eat. While he slept, the driver was shot and killed in the same parking lot. As they secured the scene, law enforcement approached the car, tapped on the windows, Ellison woke, and he exited the SUV. As he did so, a firearm fell onto the passenger seat in plain view of law enforcement. Because of a prior felony conviction, Ellison was charged under 18 U.S.C. 922(g)(1). Ellison seeks to suppress the firearm. [DE 17]. However, Ellison lacks standing to do so.

### I.  RELEVANT FACTS

In the late hours of August 26th into the early hours of August 27th, Ellison hitched a ride for a bite to eat with Tamia Jackson and Malik Sleet, the former the

owner of the black SUV and the latter driving the SUV. On the way, Ellison fell asleep in the front passenger seat. His friends left Ellison in the car while they presumably went to get food.

Well after 3:00 a.m., multiple shots were reported to the Lexington Police Department from around the area of Winchester Road and Seventh Street in the same parking lot where the SUV sat. Upon investigation, police found and declared that Malik Sleet was deceased.

As officers sought to secure the scene and investigate, Officer Talor Hines approached a black SUV. The following is taken from the body-worn camera ("BWC") footage of Officer Hines reviewed by the Court. [Conventionally filed in the record, *see* DE 21].

As Hines approached the vehicle, he initially shined his flashlight into the tinted windows. Presumably upon seeing Ellison, Officer Hines tapped on the passenger side window. At this point, Officer Hines turned back to speak with another law enforcement officer about an issue seemingly unrelated to the vehicle. When Officer Hines returned his attention back to the SUV approximately twenty seconds later, he again tapped on the window. Officer Hines then proceeded to circle the SUV, approach the driver's side door, unsuccessfully tried to open the door, and more forcefully tapped on the window. Ellison finally roused and opened the driver's side door setting off the SUV's alarm.

Officer Hines attempted asked Ellison if he had keys or if this was his car, however, this Ellison's side conversation is largely drowned out by the car alarm. During this exchange, Ellison began digging into his pockets. Officer Hines asked if

Ellison knew where "the keys are at," but Ellison said he did not know as he found his cell phone. Ellison began to make a phone call and as he moved in the passenger seat, a sound of something dropping can be heard on the BWC. The Court cannot conclusively determine what Officer Hines said next, but United States acknowledged in its brief that Officer Hines directed Ellison out of the vehicle. At this point, another officer was on the passenger side and corralled Ellison as he made a phone call, ignoring the questions from Officer Hines. Ellison started to walk away when Officer Hines told him to stay where he was. An individual, later identified as Tamia Jackson's father, then approached Ellison. Officer Hines told the individual that Ellison was asleep in the car. The individual then proceeded to inform Ellison of Sleet's death, news that shocked Ellison.

Officer Hines next placed Ellison in custody by handcuffing him. Officer Hines explained to another officer that Ellison "was asleep in the car, I just woke him up, [and] he dropped a gun on the passenger seat." Officer Hines asked if there was any "weed" in the SUV as the SUV smelled liked weed. Officer Hines explained to him that he does not know that Ellison did anything, but he was asleep in a car in the middle of a crime scene.

While Officer Hines was speaking with Ellison and informing his fellow officers of the presence of the firearm, another officer was viewing into the SUV with a flashlight and confirmed Officer Hines's observations.

As Officer Hines moved Ellison to his cruiser, another law enforcement officer confirmed that Ellison was a previously convicted felon.

3

The Court held a suppression hearing on June 7, 2024, at which time it heard testimony from three officers, including Officer Hines, and watched BWC footage as part of the United States's presentation of evidence. Ellison cross-examined the witnesses and made arguments in support of his position.

## II.   ANALYSIS

Ellison argues that Hines initial contact with him was an unconstitutional seizure, and what flowed from that was an unconstitutional entry into the vehicle, an ultimately an unconstitutional search of the vehicle and seizure of the firearm via a state search warrant supported by an affidavit that both misrepresented and omitted information with the intention to mislead the issuing judge.

The Court disagrees with Ellison. Ellison has no standing to challenge the entry into or search of the vehicle. Further, though Ellison argues his rights were violated when Officer Hines initially approached his vehicle through the time he was arrested, the initial contact with Ellison and his arrest are immaterial to the Fourth Amendment analysis here.

### A.   ELLISON DOES NOT HAVE STANDING TO CHALLENGE THE SEARCH

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993). In other words, Ellison can only challenge the discovery of the firearm in the SUV if his Fourth Amendment rights attach to the SUV. The analysis begins and ends there, regardless of the other actions

of the officers. The Sixth Circuit's recent decision in *United States v. Rogers*, 97 F.4th 1038 (6th Cir. 2024), the facts of which mirror this case, are dispositive of the issue.

The facts of *Rogers* begin when law enforcement was called about a possible domestic assault. Upon arriving at the scene, law enforcement found Rogers sitting in the passenger seat of a car that he told law enforcement belonged to his girlfriend. When law enforcement ran his name through a database, Rogers had an outstanding felony warrant. Following Rogers' arrest, law enforcement "found two digital scales, plastic baggies, a large bag of marijuana, and a loaded pistol" in the car. *Id*. at 1040-41.

> The Sixth Circuit then provided the relevant legal framework.
>
> To establish that police violated his Fourth Amendment rights, Rogers must show that he had "a 'legitimate expectation of privacy'" in his girlfriend's car. A legitimate expectation of privacy comes in two parts. First, Rogers "must have exhibited an actual (subjective) expectation of privacy." Second, "that expectation must also be one that society is prepared to recognize as reasonable."
>
> We recognize expectations of privacy "on a case-by-case basis," considering among other factors the defendant's "proprietary or possessory interest in the place to be searched," his "right to exclude others," and "whether he was legitimately on the premises." But Rogers must assert that his own Fourth Amendment rights were infringed. Fourth Amendment rights "may not be vicariously asserted."

*Id*. at 1041-42 (internal citations omitted). Because Rogers "was neither owner nor driver of the vehicle," the Sixth Circuit held that "Rogers failed to meet his 'burden of establishing his standing' to challenge the search . . . because he never exhibited a subjective expectation of privacy." *Id*. at 1042 (quoting *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001)).

**5**

The Sixth Circuit's conclusion in *Rogers* demands the same conclusion here. The burden is on Ellison to establish standing by demonstrating that his own Fourth Amendment rights were infringed upon. Ellison was neither the owner of the SUV nor its driver. Or, as Ellison put it in his motion, "he did not own the vehicle" nor did he have "possession or control of the vehicle." [DE 17-1, Page ID# 70]. He was a "mere guest/passenger in the vehicle." [DE 17-1, Page ID# 70]. Such facts conclusively demonstrate that Ellison had no subjective expectation of privacy and no standing to object to law enforcement's discovery of a firearm at the scene.

Nor do these facts supply Ellison with the requisite standing to challenge the search warrant that ultimately resulted in the seizure of the firearm, as the same analysis applies to searches subject to search warrants as to warrantless searches. "To have standing to contest a search, a defendant must show that he had a legitimate expectation of privacy in the area searched or items seized. This legitimate expectation of privacy exists only if the defendant exhibited an actual subjective expectation of privacy and the defendant's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable. *United States v. Jenkins*, 743 F. App'x 636, 647 (6th Cir. 2018) (affirming the denial of a motion to suppress for lack of standing) (internal citations and quotation marks omitted). Likewise, "[d]etermining that a defendant has Fourth Amendment standing is a prerequisite to granting a motion for a *Franks* hearing." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008).

Simply put, whether Ellison argues the initial discovery of the firearm was unconstitutional because it was the result of an unconstitutional search of the black

6

SUV, or whether he claims the search warrant was deficient, he lacks standing to challenge both. Thus, the firearm need not be suppressed from the evidence in this case.

B. **THE INITIAL CONTACT WITH ELLISON IS IMMATERIAL TO THE FOURTH AMENDMENT ANALYSIS**

Ellison propounds several other arguments, however, all of them relate to the initial entry into the vehicle or the search warrant. Those arguments are all mooted by his lack of standing.

Only one additional argument justifies mention here. Ellison argues Officer Hines's initial approach of the black SUV was unconstitutional. This claim is belied by the BWC and testimony at the suppression hearing. Officer Hines testified he had cleared the parking lot where the homicide victim was but noticed the black SUV remained. He approached the vehicle to determine if the vehicle was involved in the shooting, if it was damaged, or if another victim could be inside.

"Courts have repeatedly held that, when an officer approaches a parked vehicle on foot without signs of aggression (such as displaying a weapon) in order to speak with the occupants, and does not block the vehicle's exit, the encounter is consensual." *United States v. England*, No. 3:20-cr-809, 2022 WL 94091, at * 4 (N.D. Ohio Jan. 10, 2022) (*citing United States v. Carr*, 674 F.3d 570, 573 (6th Cir. 2012). Once Ellison voluntarily opened the vehicle's door, Officer Hines detected the odor of marijuana. This provided reasonable suspicion for the remainder of the events that occurred as to Ellison's person, including ordering him out of the car and detaining him further. Those events are only connected to the firearm because Ellison's movements during

7

this quick series of events meant that the firearm fell to the floor and made a noise. The reasonable suspicion to detain Ellison further does not somehow give rise to standing for Ellison to challenge the discovery of the firearm in the vehicle.[1]  The initial approach of Ellison was constitutional and, nonetheless, does not change his lack of standing to challenge the search of the vehicle.

### III.  CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress.  [DE 17].

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b) (1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 13th of June, 2024.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

---

[1] The Court agrees with the United States that there are several reasons Officer Hines or Officer Smith might have been entitled to a constitutional warrantless search of the vehicle in this circumstance; for example, the plain smell of marijuana gives rise to probable cause to search a vehicle, as does the plain viewing of a firearm at the scene of a shooting from outside a vehicle.  However, those arguments presuppose that Ellison has standing to challenge the search and seizure of the firearm, which he does not.

8