UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Case No. 5:24-cr-00025-GFVT-MAS-1 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| WILLIAM MICHAEL ELLISON, | ) ) | **&** **ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Magistrate Judge Stinnett's Recommended Disposition on Defendant Ellison's Motion to Suppress. [R. 25.] Mr. Ellison was a passenger in an SUV searched by Lexington Police. Because he had no reasonable expectation of privacy in the vehicle, his Objection **[R. 26]** is **OVERRULED**, the Recommended Disposition **[R. 25]** is **ADOPTED**, and the Motion to Suppress **[R. 17]** is **DENIED**.

**I**

In August 2023, Defendant Ellison, Malik Sleet, and Tamia Jackson decided to grab a late-night bite to eat. [R. 17-1 at 1; R. 25 at 1–2.] The group piled into an SUV owned by Ms. Jackson and driven by Mr. Sleet. [R. 17-1 at 1; R. 25 at 1–2.] Defendant Ellison fell asleep during the drive. [R. 17-1 at 1.] When the group arrived, Sleet and Jackson left Ellison slumbering in the parked SUV. *Id.*

At that point, the night took a tragic turn. Sometime after 3:00 a.m., Lexington Police received reports of multiple shots fired in the vicinity of the parking lot where Ellison slept. [R.

25 at 2; R. 17-1 at 1.] Responding Officers determined that Malik Sleet had been shot and killed. [R. 25 at 2; R. 17-1 at 1.]

While securing the scene, Officer Hines approached Jackson's SUV and tapped several times on the passenger side window. [R. 21.] But Ellison—who was still asleep in the passenger seat—did not rouse. *Id.* Hines then walked around the SUV and tried to open the driver's side door. *Id.* When the door wouldn't open, he tapped more loudly on the window. *Id.* Ellison awoke and opened the driver's side door, inadvertently setting off the car's alarm. *Id.*

Over the sound of the car alarm, Hines inquired about the owner of the car and the location of the keys. *Id.* Ellison began making a call on his cell phone while explaining that he did not know where the keys were. *Id.* During the exchange, Hines heard something fall to the floor on the passenger side of the car. *Id.* He directed Ellison to exit the vehicle and keep his hands in the air. *Id.*

As Ellison did so, Tamia Jackson's father approached to inform Ellison of Sleet's death. *Id.* Hines handcuffed Ellison, who was shocked by the news. *Id.* Hines can be heard on the BWC footage advising another officer that Ellison "dropped a gun on the passenger seat." *Id.* Hines also asked Ellison whether there was "weed" in the car, opining that the SUV "smells like weed." *Id.*

Ellison remained detained while another officer looked inside the SUV and saw the gun. *Id.* [*See also* R. 25 at 3.] Hines then directed Ellison toward a police vehicle as officers confirmed Ellison was a felon. [R. 21.] Based on this information, police later obtained a search warrant. [R. 25 at 4, 6.] In March 2024, Defendant Ellison was indicted for possession of a firearm by a convicted felon. [R. 1.] Judge Stinnett held a suppression hearing in which he

2

considered officer testimony and reviewed body worn camera (BWC) footage. [R. 25 at 4.] This Court has also carefully examined the BWC video.

## II

Pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1), any party may serve and file specific written objections to a Magistrate Judge's Recommended Disposition within fourteen days of being served with the Recommended Disposition. In order to receive *de novo* review by this Court, any objection to the Recommended Disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *see also* Fed. R. Crim. Pro. 59(b)(3). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal citation omitted).

Defendant Ellison advances three objections to Judge Stinnett's Recommendation. [R. 26.] In particular, he avers that (1) Judge Stinnett relied on inaccurate information; (2) Judge Stinnett incorrectly found no Fourth Amendment standing; and (3) police lacked reasonable suspicion to approach Ellison in the first place. *Id.* The Court will overrule each objection.

### A

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "To supplement th[is] bare text, th[e] [Supreme] Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011). But the exclusionary rule only extends so far: because "'Fourth Amendment rights are personal rights[,]'" they "'may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133–34

(1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).  In other words, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134.  Such a person lacks Fourth Amendment standing and may not benefit from the exclusionary rule. *Id.*; *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 385 (2022); *see also United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) ("[P]assengers who have no expectation of privacy or possessory interest in a stopped vehicle do not have standing to challenge the validity of a subsequent search of that vehicle on Fourth Amendment privacy grounds.").

## B
## 1

First, the Court will overrule Ellison's factual objections because they are rendered moot by his lack of standing.[1]  Ellison rejects this conclusion, asserting that he had an expectation of privacy in Jackson's SUV because (1) the windows were tinted and (2) he had permission to be in the vehicle.  [R. 26 at 3.]

The Court disagrees.  "[T]he fact that [passengers] were . . . in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched." *Rakas*, 439 U.S. at 148; *see also United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007).  Defendant Ellison did not own the SUV and was not driving the SUV.  [R. 17-1 at 1; R. 25 at 1–2.]  Accordingly, Sixth Circuit authority forecloses any contention that he had a legitimate expectation of privacy in the vehicle.

---

[1] Ellison states that Judge Stinnett "is using incorrect information or information that is unreliable as a basis to reach a result favorable to the prosecution[.]"  [R. 26 at 2.]  Specifically, he disputes that the firearm was in plain view or that Officer Hines heard it fall to the floor.  Ultimately, these factual objections make little difference because Ellison lacks Fourth Amendment standing to challenge the search.

4

*See United States v. Rogers*, 97 F.4th 1038, 1042 (6th Cir. 2024) (defendant "never exhibited a subjective expectation of privacy" in his girlfriend's vehicle when "[h]e was neither owner nor driver of the vehicle"). Ellison therefore lacks Fourth Amendment standing to challenge the search and subsequent warrant. *See also United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) ("Determining that a defendant has Fourth Amendment standing is a prerequisite to granting a motion for a *Franks* hearing.").

**2**

Finally, Ellison asserts that the officers did not have reasonable suspicion to approach him in the first place. [R. 26 at 3.] Again, this argument fails.

Ellison is correct that—even though he lacks standing to challenge the vehicle's search—he may contest his own detention or seizure. *See generally Brendlin v. California*, 551 U.S. 249 (2007); *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) ("'If either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.'" (quoting *Brendlin*, 551 U.S. at 259)). But here, the initial encounter was consensual. Thus, police didn't need reasonable suspicion.

There are three categories of reasonable and lawful "warrantless encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) . . . *Terry* stop[s] . . . and (3) arrests [] based upon 'probable cause.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008). "Courts have repeatedly held that, when an officer approaches a parked vehicle on foot without signs of aggression (such as displaying a weapon) in

order to speak with the occupants, and does not block the vehicle's exit, the encounter is consensual." *United States v. England*, No. 3:20-cr-809, 2022 WL 94091, at *4 (N.D. Ohio Jan. 10, 2022).

Here, the BWC footage reveals that Hines approached the vehicle and knocked on the window. It does not appear—and Ellison does not contend—that Hines was displaying a weapon or blocking the passenger side door. After several knocks, the Defendant awoke, voluntarily opened the driver's side door, and conversed with Hines. Accordingly, even assuming Hines lacked reasonable suspicion for the initial encounter, it was consensual and therefore reasonable. *See United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008) ("[L]aw enforcement officers may ask citizens 'general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave.'") (internal citation omitted). And once Hines apprehended the gun and the smell of marijuana emanating from the vehicle, he had reasonable suspicion to detain Ellison. *See, e.g.*, *United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022) ("[T]he smell of marijuana, itself, justified [officer] to detain [defendant] and investigate the odor's source.").

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Judge's Stinnett's Report and Recommendation **[R. 25]** is **ADOPTED** as and for the Opinion of the Court;

2. Ellison's Objections to the Recommendation **[R. 26]** are **OVERRULED**; and

3. Defendant Ellison's Motion to Suppress **[R. 17]** is **DENIED**.

This the 11th day of July, 2024.

Gregory F. Van Tatenhove
United States District Judge